IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

RANDALL BUSSE,

                    Plaintiff,

          vs.                                                   Case No. 05-1316-JTM

JO ANNE B. BARNHART,
Commissioner of Social Security,

                    Defendant.

## MEMORANDUM AND ORDER

Plaintiff Busse has applied for disability insurance benefits (DIB) under Title II of the Act, 42

U.S.C. §§ 401 *et seq.*, and for supplemental security income (SSI) benefits, based on disability under

Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*   His application was denied initially and on

reconsideration.  The application was denied by the ALJ on May 9, 2005, a decision affirmed by the

Appeals Council on August 18, 2005.  There are two allegations of error.  First, that the ALJ erred at

Step Five in making a decision not supported by the evidence relating to Busse's residual functional

capacity (RFC) or the testimony of the vocational expert.  Second, the ALJ's determination of Busse's

RFC fails to account for his obesity.

At the time of the onset of the alleged disability, Busse was 47 years old; he was 49 at the time

of the hearing before the ALJ.  He has a high school education and has additional training in law

enforcement.  He has worked as a police officer and a police supervisor, and as a general farmer and

livestock rancher.  He claimed he became disabled on October 20, 2003, due to increasing back pain

after working on a fence the day before.  He has also cited ankle pain, the prior amputation of three

fingers from his left hand, and some mental impairments. Busse has not engaged in substantial gainful activity since the alleged onset of disability.

Busse has stated that his back problems began in 2002 when a horse fell on him, an accident which also left him with a broken ankle. In March of 2004, he lost three fingers from his left hand while breaking a horse. He has asthma which is controlled by over-the-counter medication. He also takes medication (Xanax) for anxiety, with the medical records indicating that Busse is doing well with the treatment.

The facts are cross-referenced generally from the record (Dkt. No. 9, at 3) or mentioned *seriatim* in the argument portion of the plaintiff's brief (Id. at 3-8), similarly dispersed through the argument section of the Commissioner's brief, (Dkt. No. 12, at 3-11), and set forth separately and in detail in the ALJ's opinion. (R. 1K-1T).

Busse lives alone and is able to care for his own personal needs. He is able to manage his grandmother's farm, as well as his own farm. He can, if he wants, cook his own meals. He can perform household chores (doing the laundry, vacuuming, mopping, cleaning, automobile maintenance) without help. He can drive both himself and his grandmother to go shopping and to meet scheduled appointments. He hunts and works with horses. He prefers to be alone rather than socializing.

The ALJ found that Busse suffered from degenerative disk disease-lumbar spine, the previous traumatic amputation of three fingers on his left hand, as well as mood, personality, and pain disorders. These impairments were severe within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c), but did not rise to the level of a listed impairment in Appendix 1, Subpart P, Regulation No. 4. The ALJ concluded that, for various reasons specified in his opinion, Busse's contentions about his limitations were not fully credible.

The ALJ then concluded that Busse had the RFC to occasionally lift, carry, push or pull 20 pounds, and to frequently lift, carry, push or pull 10 pounds. He can engage in some combination of standing or walking for six hours in an eight-hour day. He can occasionally climb ramps and stairs; he cannot climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl. He is limited in his ability to use his left hand, and is limited in the ability to handle (gross manipulation) and grip, and finger (fine manipulation). He cannot finger with the left hand, but he can use his right hand to help balance larger objects. He must avoid concentrated exposure to extreme cold, heat, or vibration, and to moderate levels of fumes, odors, dusts, gases, poor ventilation, or to hazards such as machinery and heights. Busse is moderately limited in the ability to work with and around others and in the ability to interact with the general public. (R. 1S).

More specifically, the ALJ noted that at the time of the disability, Busse was performing some farm work, and later continued to perform some such work. However, this type of activity did not rise to the level of generating a substantial gainful activity.

The ALJ noted Busse's history of back pain, and his treatments from March of 2001 to March of 2004 at the Harper Hospital Medical Clinic. He was initially told to take over-the-counter Ibuprofen. Starting in July of 2002, he has received treatments at the Anthony Primary Care Center for back pain and anxiety. In late 2003, Busse was diagnosed with degenerative disk disease, and began physical therapy in November of that year. A March 17, 2004 consultative examination included an x-ray showing mild lower lumbar spondylolysis. Busse told the examiner that he cannot sit or stand for more than ten minutes without discomfort and pain. He said he could walk up to 100 yards, or lift and carry 20 pounds. (R. 219). He indicated he could drive, and did not use an assistive device. The examiner, Dr. Stephen Jenkins, D.O., reported that Busse's gait was mildly antalgic; he could sit and stand up. He had difficulty getting on and off the examination table, and standing from a supine position. He

3

could pick up a coin and open a door with his right hand. He could not use his left hand due to the amputations, swelling, and pain. Jenkins reported that lumbrosacral tests of Busse show 50 degrees flexion, 10 degrees extension, and 10 degrees right and left lateral bend. Lumbosacral left lateral bend was 10 degrees. Seated straight leg raising test was negative, bilaterally. There was no evidence of muscle spasms.

The ALJ found that Busse's claims of disabling pain, anxiety, and depression were not fully credible because medical records showed that medication relieved his pain. The ALJ explicitly noted that records from the Anthony Primary Care Center in the month immediately prior to the hearing indicated that Busse was able to control his pain through the use of Percocet. (R. 288). He further noted that Busse's claims of disability were inconsistent with his extensive daily activities, including regularly using a tractor to work on his and his grandmother's farms (which included 260 acres of land and 460 acres of pasture).

As noted earlier, the claimant argues that the ALJ erred in two respects. First, he contends that the ALJ erred in his Step Five analysis, since the vocational expert was unable to assign an exact percentage of unskilled jobs which Busse could perform without being able to use his left hand. (R. 172). He further stresses that the RFC as calculated by the ALJ failed to specify whether the limitation to his gross manipulation was such that the manipulation should be frequent, occasional, or never. (Dkt. No. 9, at 5). Second, Busse argues that the ALJ erred in failing to explicitly consider in his RFC analysis the impact of Busse's weight. Busse notes the disability report form he completed in 2003 (R. 75) in which he reported his weight as 230 pounds. He further notes the comment by Dr. Jenkins in his report of April 6, 2004, stating in passing that Busse "is obese." (R. 221). The Physical Examination section of the same report states that Busse's "[w]eight is 220 pounds without shoes." (Id. at 220).

4

The court finds no error.  As to the RFC reduction in the claimant's ability to perform gross manipulation with his left hand, it is clear from the transcript of the hearing and the ALJ's opinion itself that the reduction was prompted by the traumatic amputation of all or most of three fingers on Busse's left hand.  While the vocational expert acknowledged that he could not "determine a percentage [for the reduction in the number of general unskilled jobs due to] no fingering with a single extremity," he proceeded to provide specific jobs which could meet the requirements of the ALJ's second hypothetical. (R. 172).  These included the jobs of copy messenger, office helper, order caller, ticket taker, call-out operator, or charge-account clerk.  (Id. at 173).  The vocational expert's response specifically incorporated the ALJ's additional limitations of "no fingering with the left hand (non-dominant hand) and the left hand only used as a helper."  (Id. at 172).

Nor does the court find any basis for reversal on the argument of the claimant that the ALJ should have considered claimant's weight in the opinion.  There is no question that an ALJ must discuss the impact of obesity where it is an explicit part of the claimant's alleged impairments, or where the medical evidence suggests that obesity contributes to a reduction in a claimant's residual functional capacity.  Thus, in *Baker v. Barnhart*, No. 03-7041, 2003 WL 22905238, *3 (10th Cir. Dec. 10, 2003), the court held that the ALJ erred in discussing claimant's back pain without any reference to or mention of the obesity of the 288-pound claimant.  The ALJ in that case failed to address the impact of the claimant's obesity at Step Four of the sequential process, even though the claimant had specifically listed obesity as one of her impairments in her claim for disability, and even though the ALJ had acknowledged at Step Two that the claimant was severely impaired by "chronic back pain secondary to a compression fracture at T11 *and obesity*."  *Id.*, at *1 (emphasis added).  Similarly, in *Morrison v. Apfel*, 146 F.3d 625, 627 (8th Cir. 1998), the court held that the ALJ erred in failing to discuss the effect of obesity of the 330-pound claimant where a treating physician had explicitly described obesity

5

as the claimant's "biggest problem," which had "caused most of the difficulties in his back, knees, and lower extremities."

However, courts have generally refused to find that an ALJ has erred in failing to discuss the impact of obesity in the absence of an express claim of obesity impairment, or of some medical evidence suggesting a potential impairment due to obesity. Thus, in *Box v. Shalala*, 52 F.3d 168 (8th Cir. 1995), the court held that the failure of the ALJ to address the effect of disability was "not fatal" to the validity of the actions of the underlying decision:

> Box did not claim a disability based on obesity in his application for benefits or at the administrative hearing. There is in fact no evidence in the record that his obesity imposed any limitations on his ability to work. There was no testimony at the hearing or medical evidence submitted regarding limitations imposed by his weight. Instead, the record shows that Box had a sixteen year work history in spite of his weight and that he felt he could return to work but for his pain.

52 F.3d at 171.

Similarly, in *Sutton v. Barnhart*, No. 05-2303, 2006 WL 1307959, at *6 (7th Cir. May 11, 2006), the Seventh Circuit recently held that a 239-pound claimant failed to show error by the ALJ in not mentioning her obesity, where claimant presented "no evidence that the side effect played any significant role in her inability to work," and further reasoning that since claimant "has been obese throughout the history of her medical treatment, and because her obesity has been remarked upon by her doctors, we have no reason to doubt that it was properly taken into account."

*See also Sassone v. Commissioner*, 2006 WL 15182 (3rd Cir. Jan. 20, 2006) ("we cannot fault the ALJ for failing to discuss Sassone's obesity because the record contains no mention of a physician diagnosing or treating Sassone for obesity"); *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005) (upholding a decision of the ALJ, notwithstanding his failure to discuss obesity, because the claimant failed to allege obesity as an impairment and the record contained no mention of obesity contributing

6

to a severe impairment); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir.2004) (per curiam) (refusing to find error by ALJ failing to mention obesity on the grounds that it had already been factored into claimant's medical reports and the applicant failed to demonstrate how the obesity would further impair his ability to work).

In this context, one District Court has observed:

> While the law of this circuit has recognized that references to height and weight in medical records may be sufficient to alert the ALJ that obesity could be a factor, the ALJ's failure to explicitly discuss obesity, when not raised by the plaintiff, is not a sufficient reason for remand if it would not affect the outcome of the case. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir.2005). Woods never raised obesity as an impairment or limitation before the ALJ, nor did Woods specify or discuss how her obesity further impairs her ability to work either in her application (Tr. 99), during her consultative examination (Tr. 207-208), or at her hearing (Tr. 34-45).FN1 Further, the ALJ adopted the limitations and findings of examining physician Dr. Wolk, who was aware of Woods' height and weight, but did not diagnose obesity as an impairment or mention obesity as contributing to any impairment.

*Woods v. Barnhart,* No. 05-0042, 2005 WL 1923554 (E.D. Pa. Aug. 8, 2005). *See also Santiago v. Barnhart*, 367 F.Supp. 728, 734 (E.D.Pa. 2005) (no error by ALJ in failing to discuss obesity of claimant, who at various times weighed from 210 to 220 pounds, since the record was "devoid ... of any evidence (medical or otherwise) that plaintiff's relatively slight obesity exacerbated his impairments, nor did plaintiff allege obesity as a disability (either in his disability application or at his hearing").

The present case is similar to that presented in *Box* and *Woods*. None of Busse's treating physicians describe him as obese or counsel him to lose weight. At no time before or during the hearing did Busse or his attorney suggest that his weight could be a source of disability. There is no evidence in the record suggesting that Busse's weight has contributed to an impairment. Rather, the record shows that Busse weighed more (242 pounds) prior to the date of alleged disability, when he was actually gainfully employed. The ALJ further incorporated into his RFC assessment the lifting, standing and sitting recommendations prescribed by Dr. Jenkins. Given the state of the evidence and the claims

actually advanced before the ALJ, the court finds no basis for reversing the Commissioner on the ground cited.

IT IS ACCORDINGLY ORDERED this 24th day of July, 2006 that the Appeal of the Claimant is hereby denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE

8